UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
EDWARD FRANCO-LOPEZ,

                Plaintiff,

           -against-

LOUIS MOLINA, FRANK DWYER, CHARLTON
LEMON, MARIO JULIEN, MARGREATA THOMPSON,
FRANKLIN HOLMES, EDWARD HORTON,
VINCENT FUCA, NATHANIEL WILLIAMSON,
DOES 1-15, and THE CITY OF NEW YORK,

                Defendants.
------------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
25-CV-00702 (OEM) (PCG)

ORELIA E. MERCHANT, United States District Judge:

On February 6, 2025, plaintiff Edward Franco-Lopez ("Plaintiff") commenced this civil

rights and defamation action against defendants Louis Molina ("Molina"), Frank Dwyer

("Dwyer"), Charlton Lemon ("Lemon"), Mario Julien ("Julien"), Margreata Thompson

("Thompson"), Franklin Holmes ("Holmes"), Edward Horton ("Horton"), Vincent Fuca ("Fuca"),

Nathaniel Williamson ("Williamson") (Molina, Dwyer, Lemon, Julien, Thompson, Holmes,

Horton, Fuca, and Williamson collectively, "Individual Defendants"), Does 1-15, and the City of

New York ("City") (Individual Defendants and the City collectively, "Defendants").[1] *See*

*generally* Complaint, Dkt. 1 ("Complaint" or "Compl.").  Plaintiff's claims arise out of his alleged

false arrest on November 8, 2023, and the subsequent publication of allegedly false and defamatory

---

[1] The Court acknowledges that Does 1-15 have not yet been identified and, as such, no attorney has made an appearance or moved to dismiss the Complaint on their behalf.

statements about that arrest in the *New York Post*. *Id.* ¶¶ 89-105. Before the Court is Defendants' fully briefed motion to dismiss the Complaint in its entirety.[2]

For the following reasons, Defendants' Motion is granted in part and denied in part.

## BACKGROUND[3]

### A. The Parties

Plaintiff Edward Franco-Lopez worked as a public defender at the Legal Aid Society ("Legal Aid") in Queens County, New York. Compl. ¶ 14. The City is a municipal corporation organized under the laws of the State of New York. *Id.* ¶ 15. By and through its officials at the Department of Correction ("DOC"), the City is responsible for the custody and care of pretrial detainees in the City's criminal courts. *Id.* ¶ 16. At all relevant times, Individual Defendants and Does 1-15 were employed by the DOC and acting within the scope of their official duties as officers, employees, agents, or servants of the City, the DOC, the New York Police Department ("NYPD"), or the Queens District Attorney's Office, or were otherwise engaged in conduct incidental to those duties. *Id.* ¶¶ 47-49. Williamson is a DOC correction officer investigator assigned to the Correction Intelligence Bureau. *Id.* ¶¶ 33-34. Molina is the commissioner of the DOC. *Id.* ¶¶ 17-18.

### B. Plaintiff's Arrest and Re-Arrest

November 8, 2023, was the first day of a criminal trial for one of Plaintiff's clients. *Id.* ¶ 53. Before the trial, Madison, a woman who identified herself as his client's stepsister, requested Plaintiff's assistance in providing trial clothes to her stepbrother. *Id.* ¶ 54. Madison provided

---

[2] *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, Dkt. 25-1 ("Motion" or "Mot."); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Complaint, Dkt. 26 ("Opposition" or "Opp'n"); Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint, Dkt. 25-2 ("Reply").

[3] The following facts taken from Plaintiff's Complaint are accepted as true for the purposes of Defendants' Motion and recites only those facts relevant to resolving the pending Motion.

Plaintiff with a bag containing a dress shirt and a shoebox with a standard pair of men's dress shoes. *Id.* ¶¶ 58-59. Plaintiff confirmed the shoebox contained a standard pair of men's dress shoes. *Id.* ¶ 59. Before the trial, Plaintiff went through security to visit the Queens Detention Complex ("QDC") to provide the clothes to his client. *Id.* ¶¶ 63-65. To go through security, Plaintiff provided the clothes, including the shoes, to DOC officers, who ran them through an x-ray scanner. *Id.* ¶¶ 65-66. A DOC officer noticed "what appeared to be contraband hidden in the heels of the shoes." *Id.* ¶ 66. DOC officers took the shoes apart and discovered four plastic bags wrapped in black electrical tape containing a total of 32.8 grams of marijuana. *Id.* ¶ 67.

At approximately 10:15 a.m., DOC officers handcuffed Plaintiff and placed him in a cell. *Id.* ¶ 68. Individual Defendants commenced an investigation. *Id.* ¶ 73. They "obtained evidence and information confirming that the shoes had been provided by Madison and that Plaintiff had no reason to know that marijuana was hidden in the heels," based on information provided by Plaintiff's co-counsel, other Legal Aid employees, and surveillance footage showing that Madison gave the shoes to Plaintiff. *Id.* ¶¶ 74-75. At approximately 12:00 p.m., Williamson released Plaintiff, "saying he was free to go because 'there's nothing here.'" *Id.* ¶ 79.

Plaintiff alleges that after he was released, Molina and Dwyer "ordered their subordinates, including Defendants Lemon, Julien, Thompson, Holmes, Horton, Fuca, Williamson, and Does 1-15, to cause Plaintiff to be re-arrested and issued a Desk Appearance Ticket ("DAT") charging him with promoting prison contraband." *Id.* ¶ 87. Williamson then called Plaintiff and "instructed him to return to QDC for re-arrest and processing." *Id.* ¶ 88. At approximately 1:00 p.m., Plaintiff presented himself at QDC, where Williamson "re-arrested" him and placed him in a cell. *Id.* ¶¶ 89-90. Williamson then removed him from his cell, placed him in handcuffs, and took his fingerprints. *Id.* ¶ 91. This process allegedly included "parading" Plaintiff through the courthouse in handcuffs

3

in front of his colleagues, judges, and court employees.  *Id.* ¶ 92.  Williamson issued a DAT and initiated a prosecution against Plaintiff.  *Id.* ¶ 93.  Before Williamson issued the DAT, the Queens District Attorney had allegedly already concluded that Madison was the true suspect.  *Id.* ¶¶ 94-95.

### C.  The *New York Post* Publication

Plaintiff alleges that the DOC and Molina "were eager to lash out and score political points" against Legal Aid because they "had received a slew of bad press based on their misconduct and contentious relationship with the federal monitor and [Legal Aid]" in a case pending before the Southern District of New York.  *Id.* ¶¶ 82, 84.  Molina had also "recently learned that, as a result of his misconduct, he was being removed from his position as commissioner."  *Id.*  Plaintiff claims that on November 8 or 9, 2023, "one or more of the Individual Defendants falsely told a New York Post reporter . . . that Plaintiff had been arrested and prosecuted for smuggling marijuana in **his own** penny loafers."  *Id.* ¶ 97.  Dwyer later responded to the same reporter, allegedly stating "on background" that "when Plaintiff was going through the x-ray machine (which was operated by DOC Officers) they noticed objects in his shoes and found the contraband."  *Id.* ¶¶ 98-99 (citation modified).  Dwyer also provided the reporter with a quote from Molina.  *Id.* ¶¶ 101-02.

The *New York Post* subsequently published an article using Plaintiff's full name and "relied exclusively on facts and information provided by 'Department of Correction and law enforcement sources,' including Individual Defendants."  *Id.* ¶¶ 104-05.  Plaintiff claims that the article contained at least four "false and defamatory statements," *id.* ¶ 105, as follows:

- "A Legal Aid Society lawyer was arrested this week for allegedly smuggling marijuana—hidden inside **his penny loafers**—to an inmate at a Queens courthouse, officials said."  *Id.* ¶ 105(a).

- "Officers noticed that two objects were wrapped in blue electrical tape and hidden in the heels **of Franco-Lopez's shoes**, sources said. . . . That's where the drugs . . . were recovered, the DOC said." *Id.* ¶ 105(b).

- "Legal Aid Attorney Edward Stevens Franco-Lopez was found with the leafy substance stuffed inside **his loafers**, officials said." *Id.* ¶ 105(c).

- "'Sadly, for the second time this year, an individual meant to practice and uphold the law has engaged in despicable, criminal behavior that endangers the lives of people in custody and our officers,' DOC Commissioner Louis A. Molina said in a statement." *Id.* ¶ 105(d).

After the article was published, Legal Aid reached out to the *New York Post* and objected to the claim that Plaintiff was wearing the shoes in which the marijuana was discovered. *Id.* ¶ 106. Individual Defendants did not "correct the record" when the *New York Post* contacted them, however, insisting that "nothing had changed." *Id.* ¶¶ 107-08.

Following the arrest, "[t]he Attorney Grievance Committee initiated an investigation of Plaintiff, and he was also stripped of his [Office of Court Administration ("OCA")] Secure Pass," so he could not perform his duties as a public defender. *Id.* ¶ 110. "[H]e was unable to make court appearances because, had he done so, the court would have been required to inform his clients that he was being prosecuted." *Id.*

On or about November 27, 2023, all charges against Plaintiff were dismissed, and the prosecution was terminated in Plaintiff's favor. *Id.* ¶ 109.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."

FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  In evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).  The court must adhere to the purpose of Rule 12(b)(6) to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011).

### DISCUSSION

Plaintiff alleges five causes of action under 42 U.S.C. § 1983 ("Section 1983"): (1) false arrest in violation of the Fourth Amendment of the U.S. Constitution ("Fourth Amendment") Compl. ¶¶ 114-17; (2) abuse-of-process in violation of the Fourth Amendment and Fourteenth Amendment of the U.S. Constitution ("Fourteenth Amendment"), *id.* ¶¶ 118-21; (3) retaliation in violation of the First Amendment of the U.S. Constitution ("First Amendment"), *id.* ¶¶ 122-29; (4) defamation in violation of the Fourteenth Amendment, *id.* ¶¶ 130-34; and (5) failure-to-intervene and conspiracy, *id.* ¶¶ 135-39.  Plaintiff alleges nine causes of action arising under New York State law: (1) defamation, *id.* ¶¶ 140-46; (2) false arrest and false imprisonment, *id.* ¶¶ 147-53; (3) malicious prosecution, *id.* ¶¶ 154-58; (4) abuse-of-process, *id.* ¶¶ 159-64; (5) violation of New York City Administrative Code Sections 8-801 to 8-807, *id.* ¶¶ 165-70; (6) assault and battery, *id.* ¶¶ 171-72; (7) intentional and negligent infliction of emotional distress, *id.* ¶¶ 173-77;

(8) negligent hiring, screening, training, supervision, and retention, *id.* ¶¶ 178-82; and (9) violations of the New York State Constitution, *id.* ¶¶ 182-88.

### A. Fourth Amendment False Arrest Claim

Defendants argue that Plaintiff's Fourth Amendment false arrest claim fails because there was probable cause to arrest him, or at least arguable probable cause. Mot. at 4-8. Plaintiff asserts that he plausibly alleges that all probable cause had dissipated prior to his second arrest, Opp'n at 9-13, and, as for arguable probable cause, no reasonable officer could have concluded that his second arrest was supported by probable cause, *id.* at 13-15.[4]

### 1. Probable Cause

Probable cause is a complete defense to false arrest claims. *Triolo v. Nassau County*, 24 F.4th 98, 106 (2d Cir. 2022). It exists when officers "have 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019). The Court evaluates only the facts available to the officer "at the time of the arrest and immediately before it." *Triolo*, 24 F.4th at 106 (quoting *Fabrikant v. French*, 691 F.3d 193, 214 (2d Cir. 2012)). An officer's reasonable mistakes of fact do not defeat probable cause. *Hill v. California*, 401 U.S. 797, 803-04 (1971). At the same time, "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983). An officer may not disregard plainly exculpatory evidence. *Triolo*, 24 F.4th at 106. Even if probable cause existed initially, it dissipates when the "groundless nature of the charge [is] made

---

[4] Plaintiff clarifies that he is only challenging the lawfulness of his re-arrest for promoting prison contraband. Opp'n at 8-13. Accordingly, the Court analyzes Plaintiff's false arrest claim as it pertains to his second arrest.

apparent by the discovery of some intervening fact." *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996)); *see also Kent v. Thomas*, 464 F. App'x 23, 25 (2d Cir. 2012). In such circumstances, continuing to detain or prosecute without further inquiry may be unreasonable. *Kinzer*, 316 F.3d at 143-44. Because the probable cause standard is objective, an officer's subjective intent or stated reason for the arrest is immaterial. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Here, Defendants argue that probable cause persisted by the second arrest because Plaintiff "carried shoes containing marijuana inside QDC and explicitly told officers he intended to pass them to his incarcerated client." Mot. at 4-5. They contend that the officers did not need "specific evidence on the elements of knowledge and intent." *Id.* at 4 (quoting *McGuire v. City of New York*, 142 F. App'x 1, 3 (2d Cir. 2005)); *see also* Reply at 2.

However, taking Plaintiff's allegations as true, Defendants' framing poses a timing issue. By noon on November 8, 2023, the DOC's investigation yielded multiple intervening facts that undercut their probable cause, including statements from Plaintiff's co-counsel and other Legal Aid staff that Madison, not Plaintiff, supplied the shoes hiding the contraband; courthouse surveillance footage corroborating Madison's handoff of the shoes to Plaintiff; and confirmation that Plaintiff was not wearing the shoes. *See* Compl. ¶¶ 71, 74-76. Williamson released Plaintiff after his first arrest because "there's nothing here." *Id*. ¶ 79. Furthermore, by the time of the second arrest, the officers had already completed an inquiry that produced only exculpatory information. *See id.* ¶¶ 76, 94. These are the kinds of facts that make the "groundless nature" of an arrest apparent and trigger a duty to re-assess rather than re-arrest. *See Stansbury v. Wertman*, 721 F.3d 84, 93 (2d Cir. 2013) (explaining that probable cause review must "encompass 'plainly exculpatory evidence' alongside inculpatory evidence to ensure the court has a full sense of the

8

evidence that led the officer to believe that there was probable cause to make an arrest"); *Triolo*, 24 F.4th at 108 (finding evidence was sufficient to demonstrate that the officer lacked probable cause where the officer ignored contrary accounts and failed to examine offered evidence).

*McGuire v. City of New York*, which Defendants cite, does not compel a different result. Reply at 2-3. *McGuire* does not stand for the proposition that Individual Defendants can look past specific evidence of Plaintiff's lack of knowledge and intent; rather, it notes that specific evidence of *mens rea* is not necessary to arrest a suspect in the first instance. *See McGuire*, 142 F. App'x at 3. Here, however, Plaintiff alleges that his second arrest occurred after he had been arrested and released, and after intervening facts pointed to another suspect. The fact that the officers may still have lacked evidence of Plaintiff's knowledge of the contraband does not negate the plausible allegations of his innocence at the time that he was re-arrested.[5]

Plaintiff has adequately alleged the absence of probable cause at this stage. Accordingly, Defendants' motion to dismiss Plaintiff's Fourth Amendment false arrest claim based on probable cause is denied.

### 2. Arguable Probable Cause

Alternatively, Individual Defendants argue that they are entitled to qualified immunity as to Plaintiff's Fourth Amendment false arrest claim because there was at least arguable probable cause to arrest Plaintiff. Mot. at 5-8. In response, Plaintiff asserts that qualified immunity as a defense is not usually successful at the motion to dismiss stage, and the Complaint alleges facts showing "that the facts and information possessed by the Individual Defendants at the time of

---

[5] The Court further notes that the *McGuire* court examined the existence of probable cause at the motion for summary judgment stage. 142 F. App'x at 2. Here, at the motion to dismiss stage, reasonable inferences are drawn in favor of Plaintiff. *See Marom v. Town of Greenburgh*, 13–cv–4733 (NSR), 2015 WL 783378, at *3 (S.D.N.Y. Feb. 23, 2015) (declining to dismiss plaintiff's false arrest claim, noting that contentions in the plaintiff's complaint asserted the absence of probable cause and raised factual questions about what occurred which were "inappropriate for resolution on a motion to dismiss").

Plaintiff's second arrest did ***not*** add up to probable cause" and no reasonable officer could conclude the arrest was objectively reasonable.  Opp'n at 14.

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists for making an arrest "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.* (quoting *Golino v. New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).  This test does not immunize the officer if "officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause."  *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)).

Nonetheless, a qualified immunity defense is often unsuccessful at the motion-to-dismiss stage because courts cannot possibly resolve the immunity question before "the earliest possible stage, i.e., prior to ascertainment of the truth of the plausible factual allegations on which a finding of a qualified immunity is premised."  *Sabir v. Williams*, 52 F.4th 51, 63 (2d Cir. 2022) (citing *Chamberlain v. City of White Plains*, 960 F.3d 100, 110 (2d Cir. 2020)).  Such a defense may also fail at the motion-to-dismiss stage because the plaintiff is "'entitled to all reasonable inferences from the facts alleged, not only those that support [their] claim, but also those that defeat the immunity defense.'"  *Id*. (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (recognizing that a district court may grant a motion to dismiss based on qualified immunity if the "defense is based on facts appearing on the face of the complaint")); *Merrill v. Schell*, 279 F. Supp. 3d 438, 445 (W.D.N.Y. 2017).

The Court declines to grant Defendants' Motion on this point. As discussed above, Plaintiff alleges that Individual Defendants had "nothing" to support his continued detention after his first arrest and were aware of another suspect at the time of his second arrest. Compl. ¶¶ 78-79. Nevertheless, Molina and Dwyer ordered their subordinates, including Williamson, to re-arrest Plaintiff. *Id.* ¶ 87. Such factual allegations sufficiently allege the absence of arguable probable cause. *See Gordon v. City of New York*, 15-CV-2439 (CBA) (VMS), 2016 WL 10678073, at *7 (E.D.N.Y. July 22, 2016) (finding that the plaintiff's allegations, including the claim that the officers knew that he was not guilty, undermined any argument that officers believed there was arguable probable cause). Furthermore, any facts supporting Individual Defendants' argument that they are entitled to qualified immunity may be demonstrated at a later stage in litigation; they are not properly before the Court at this time. *See id.*

Accordingly, Individual Defendants' motion to dismiss the Fourth Amendment false arrest claim based on qualified immunity is denied.

### B. Fourth and Fourteenth Amendment Abuse-of-Process Claim

Defendants argue that Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim[6] is barred by probable cause or, alternatively, by arguable probable cause as to Individual Defendants, and that Plaintiff fails to sufficiently allege facts that support the elements of an abuse-of-process claim. Mot. at 8-9. In response, Plaintiff contends that probable cause and arguable probable cause do not bar his abuse-of-process claim and that the Complaint alleges facts in support an abuse-of-process claim, showing how Individual Defendants acted to obtain a collateral objective rather than a legitimate law enforcement purpose. Opp'n at 15-17.

---

[6] "Courts use the terms 'abuse of process' and 'malicious abuse of process' interchangeably to refer to the same claim." *Intorcia v. City of New York*, 24-cv-4837 (KAM) (SDE), 2025 WL 3515354, at *8 n.15 (E.D.N.Y. Dec. 8, 2025).

11

The Court acknowledges that courts in this Circuit are divided on whether probable cause is a complete defense to Fourth and Fourteenth Amendment abuse-of-process claims when analyzing the merits of such claims. *See Intorcia v. City of New York*, 24-cv-4837 (KAM) (SDE), 2025 WL 3515354, at \*8-9 (E.D.N.Y. Dec. 8, 2025) (collecting cases and finding that probable cause is not a complete defense to abuse-of-process); *see also Mangino v. Inc. Village of Patchogue*, 808 F.3d 951, 958-59 (2d Cir. 2015) ("There has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law."). *Compare, e.g.*, *Irish v. City of New York*, 09 Civ. 5568 (RMB), 2010 WL 5065896, at \*6 (S.D.N.Y. Dec. 6, 2010) (finding "the presence of probable cause negates a claim for abuse of process") (quoting *Sforza v. City of New York*, 07 Civ. 6122 (DLC), 2009 WL 857496, at \*17 (S.D.N.Y. Mar. 31, 2009))*, and Hickey v. City of New York*, 01 Civ. 6506(GEL), 2024 WL 2724079, at \*7 (S.D.N.Y. Nov. 29, 2004) (concluding that the existence of probable cause offers a complete defense to abuse-of-process)*, with Ortiz v. County of Nassau*, 20-CV-3469 (OEM) (SIL), 2025 WL 590706, at \*10 (E.D.N.Y. Feb. 24, 2025) (finding probable cause has not been a complete bar to an abuse-of-process claim where plaintiffs demonstrate the elements of abuse-of-process without relying on an inference from an alleged lack of probable cause)*, and Rao v. City of New York*, 14-CV-7422 (RRM) (LB), 2018 WL 1582289, at \*10 (E.D.N.Y. Mar. 29, 2018) (concluding that, even though the defendants had probable cause to arrest the plaintiff, it was not fatal to his malicious abuse-of-process claim).

At this stage, Defendants' argument that probable cause defeats Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim is unavailing. As discussed above, Plaintiff has alleged facts suggesting the absence of probable cause and therefore it is not a basis to "negate" and dismiss Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim. *See Ying Li v.*

12

*City of New York*, 246 F. Supp. 3d 578, 618 (E.D.N.Y. 2017) (denying motion to dismiss an abuse-of-process claim that argued that probable cause is a complete defense and acknowledging that the court had already found the complaint sufficiently alleged the absence of probable cause). Furthermore, the fact-intensive nature of determining whether probable cause negates Plaintiff's abuse-of-process claim indicates that dismissing the claim based on probable cause is premature at this stage. For those reasons, Defendants' motion to dismiss Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim based on probable cause is denied. Similarly, because the Court has already determined that Plaintiff sufficiently alleges the absence of arguable probable cause and that the arguable probable cause applicability analysis is premature at this stage, Individual Defendants' motion to dismiss Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim based on qualified immunity is also denied.

Defendants also argue that Plaintiff has failed to plausibly allege the third element of an abuse-of-process claim, that the officer who arrested him acted to obtain a collateral objective, and instead only sets forth conclusory facts in support. Mot. at 9. Under New York law, an "abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)). "To plead a collateral objective, a plaintiff must plausibly plead not that defendant acted with an 'improper motive,' but rather an 'improper purpose': '[A plaintiff] must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution.'" *Ying Li*, 246 F. Supp. 3d at 616 (quoting *Savino*, 331 F.3d at 77). "[S]afeguarding one's own employment lies outside the legitimate goal of criminal process," and

13

has been found to be an improper collateral objective. *Hernandez v. Wells*, 01 Civ. 4376MBM, 2003 WL 22771982, at *9 (S.D.N.Y. Nov. 24, 2003).

Plaintiff has adequately alleged the third element of an abuse-of-process claim. He alleges that the Defendants had at least one collateral objective for his prosecution: that Molina had recently learned he was being ousted as the DOC commissioner, in part because of a slew of bad press received, and, thus, Molina and his employees were eager to lash out and score political points against their adversaries, like Legal Aid. *See* Compl. ¶¶ 82-86. Scoring political points against adversaries in light of deteriorating public credibility is not unlike safeguarding one's own employment and thus is a plausibly improper collateral objective. The Court does not reach the other two elements of Plaintiff's abuse-of-process claim because Defendants do not challenge them.

Accordingly, Defendants' motion to dismiss Plaintiff's Fourth and Fourteenth Amendment abuse-of-process claim is denied.

### C. First Amendment Retaliation Claim

Individual Defendants move to dismiss Plaintiff's First Amendment retaliation claim for "fail[ure] to sufficiently allege a causal connection between his arrest and any protected speech."[7] Mot. at 9. In response, Plaintiff argues that he sufficiently alleged First Amendment retaliation by the fact that he "engaged in constitutionally protected speech or conduct through his association with Legal Aid" that was targeted by Defendants' motivation to score political points against Plaintiff and Legal Aid. *See* Opp'n at 17-18.

---

[7] Defendants also argue that Plaintiff's retaliation claim fails because he does not sufficiently plead the absence of probable cause. Mot. at 10. While probable cause is a complete defense to a federal claim of retaliation, *Nieves v. City of New York*, 22-cv-10204 (MKV), 2024 WL 1363570, at *5 (S.D.N.Y. Mar. 29, 2024) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019)), Plaintiff has sufficiently pleaded an absence of probable cause. *See supra* Section A.1.

A First Amendment retaliation claim requires that a plaintiff show "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013); *see Nieves v. Bartlett*, 587 U.S. 391, 398-99 (2019) (noting that to prevail on a retaliation claim, a plaintiff must establish a causal connection between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury" by showing that the motive was a "but-for" cause (citing *Harman v. Moore*, 547 U.S. 250, 256 (2006))). As to injury, chilled speech is an example of injury but a "plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Dorsett*, 732 F.3d at 160; *see Connick v. Myers*, 461 U.S. 138, 145 (1983) (considering whether government employees could be "prevented or 'chilled'" from free association by the fear of discharge).

Plaintiff has plausibly alleged First Amendment retaliation.[8] The thrust of Plaintiff's First Amendment retaliation claim is that he was retaliated against because he was an attorney for Legal Aid, which regularly advocates for DOC reform. Opp'n at 18. Association with non-profit legal aid is a mode of expression and association protected by the First Amendment. *See NAACP v. Button*, 371 U.S. 415, 428-29 (1963) (holding that NAACP's litigation of anti-segregation cases and solicitation of plaintiffs were "modes of expression and association protected by the First and

---

[8] Plaintiff avers that his First Amendment right is established through his and Legal Aid's right to solicit a client to pursue litigation. Opp'n at 17-18 (citing *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third & Fourth Dep'ts*, 852 F.3d 178, 184-86 (2d Cir. 2017)). Nonprofit organizations that engage in litigation are entitled to First Amendment protection to solicit clients as a vehicle of political expression and association. *See In re Primus*, 436 U.S. 412, 431 (1978). However, the case that Plaintiff relies on, *Jacoby & Meyers, LLP*, addressing whether law firms had a First Amendment right to associate with or petition on behalf of clients, ultimately held that law firms do not have a First Amendment right to associate with or petition on behalf of clients. 852 F.3d at 184-87. While there, the Second Circuit recognized that the First Amendment bears on situations where legal aid "clients and attorneys may seek each other out to pursue litigation," *id.* at 185, *Jacoby & Meyers, LLP* is inapposite. In the instant case, Plaintiff was not allegedly soliciting or "seeking out" clients for Legal Aid.

Fourteenth Amendments"). The implicit right of freedom of association is protected by the First Amendment from retaliation for doing so. *Cf. Smith v. Ark. State Highway Emp., Loc. 1315*, 441 U.S. 463, 465 (1979) (acknowledging that public employees are protected by the First Amendment from retaliation for associating, speaking freely, and petitioning openly); *Cobb v. Pozzi*, 363 F.3d 89, 101-07 (2d Cir. 2004) (collecting cases and acknowledging same). While the *Smith* and *Cobb* courts addressed the First Amendment rights of public employees, "private citizens enjoy a more absolute freedom of speech than that of public employees." *Doe v. City of New York*, 18-cv-670 (ARR) (JO), 2020 WL 108265, at *12 (E.D.N.Y. Jan. 9, 2020). Therefore, it follows that a private citizen like Plaintiff would be afforded the same protection of the right to freedom of association from retaliation. As a result, Plaintiff's alleged association with Legal Aid is sufficient at this stage to establish a First Amendment right that is protected against retaliation. Plaintiff also asserts that Individual Defendants' retaliation was motivated by his exercise of his First Amendment right. *See* Compl. ¶¶ 124-26. Plaintiff contends that Individual Defendants sought to score political points against Plaintiff and Legal Aid due to Legal Aid's "role in exposing problematic conditions in City jails and in generating press that was critical of DOC and its officials." *Id.* ¶¶ 124-25. Taken as true, these facts show that Individual Defendants were driven to arrest Plaintiff because of their desire to lash out at Legal Aid for its purported exposure of DOC's failures. *Contra Thomas v. Town of Lloyd*, 711 F. Supp. 3d 122, 136 (N.D.N.Y. 2024) (dismissing the plaintiff's First Amendment retaliation claims for failure to allege that the defendants manifested a retaliatory animus towards him or took adverse actions against him because of any retaliatory animus). Individual Defendants do not challenge Plaintiff's allegations of injury, and he asserts facts showing that his ability to advocate on behalf of his clients with Legal Aid was effectively

prevented by the loss of his OCA Secure Pass resulting from the Attorney Grievance Committee investigation after his arrests. *See* Compl. ¶¶ 127-28.

Thus, because Plaintiff asserts that he was arrested out of Individual Defendants' desire to retaliate against Legal Aid and that his right to associate with Legal Aid was prevented, Plaintiff has plausibly alleged First Amendment retaliation. Accordingly, Individual Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim is denied.

### D.  Fourteenth Amendment Defamation Claim

Individual Defendants argue that Plaintiff's Fourteenth Amendment defamation claim, specifically, Plaintiff's purported "stigma plus" defamation claim,[9] should be dismissed because he has failed to sufficiently allege a tangible and material state-imposed burden or that adequate process was unavailable. Mot. at 10. In response, Plaintiff asserts that he has alleged facts showing "quintessential examples of statements that are sufficiently stigmatizing to call into question one's good name and injure their reputation," and he urges the Court to follow other circuit courts finding that deprivations of Fourth and Fourteenth Amendment rights constitute the "plus." Opp'n at 18-19.

To bring a "stigma-plus" defamation claim, a plaintiff must sufficiently allege "(1) the utterance of a statement 'sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false,' and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (quoting *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds sub nom.*, *Conn. Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003)).

---

[9] While defamation is an issue of state law, in limited circumstances, the "stigma plus" doctrine "provides a remedy for government defamation under federal constitutional law." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004) (citing *Paul v. Davis*, 424 U.S. 693, 701-10 (1976)).

"'[D]eleterious effects [flowing] from a sullied reputation,' standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Id.* (quoting *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994)).  However, a "specific deprivation of [an] opportunity to seek employment caused by a statutory impediment established by the state" rises to the severity of reputational harm contemplated by the "plus" prong.  *Valmonte v. Bane*, 18 F.3d 992, 1001 (2d Cir. 1994). Furthermore, though not explicit in the rule, a causal connection between the allegedly defamatory statement and the burden is implied.  *See Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005) (finding that, while there is no requirement that the stigma and plus issue from the same actor at the same time, both stigma and plus must be sufficiently proximate such that (1) to a reasonable observer, stigma and plus appear connected due to their order of appearance or origin and (2) the actor imposing the plus adopted those statements); *Patterson v. City of Utica*, 370 F.3d 322, 336 (2d Cir. 2004) ("A stigma-plus claim . . . requires that a plaintiff's interest in his reputation be implicated *in connection with* his termination").  However, "in order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law.  Stated differently, the availability of adequate process defeats a stigma-plus claim." *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006).

Plaintiff alleges that the "stigma" here arises from Individual Defendants knowingly making the four false statements to the *New York Post*, and that they "were sufficiently derogatory to cause severe damage to Plaintiff's professional reputation." Compl. ¶ 131.  Defendant does not challenge whether Plaintiff has sufficiently alleged the stigma prong. *See* Mot. at 10-12; Reply at 6-7.  To satisfy the "plus" prong of the stigma-plus claim, Plaintiff alleges that he suffered three state-imposed burdens and alterations of status: (1) deprivations of his rights to be free from false arrest, abuse-of-process, retaliation, and due process violations; (2) deprivation of his liberty

18

interest to engage in his chosen profession free from unreasonable governmental interference through the loss of his OCA Secure Pass; and (3) deprivations of his rights and liberties under the Constitution and laws of the State of New York and ordinances of the City of New York. *Id.* ¶ 133.

As alleged, the facts do not show a plausible connection between the alleged defamatory statements and the first alleged burden of the deprivations of Plaintiff's rights to be free from false arrest, abuse-of-process, retaliation, and due process violations or the third alleged burden of the deprivations of his rights and liberties under the Constitution and laws of the State of New York and ordinances of the City of New York. Indeed, the allegedly false statements to the *New York Post* were made after Plaintiff's re-arrest and ostensibly after the alleged deprivations of his rights to be free from false arrest, abuse-of-process, retaliation, due process, and corresponding rights under New York State Constitution and laws and New York City ordinances. Thus, it is not plausible that the defamatory statements resulted in his arrest or prosecution. *See Lewis v. City of New York*, 18 F. Supp. 3d 229, 238 (E.D.N.Y. 2014) (finding that the plaintiff failed to state a claim for defamation where he did not show any evidence that defamatory statements led to his dismissal); *Paige v. Moskalik*, 07 Civ. 7381 (SCR) (GAY), 2010 WL 6466052, at *8 (S.D.N.Y. Apr. 28, 2010) (finding the plaintiff did not allege that the burden of lost wages was the result of the alleged defamatory statement but rather that it was his incarceration), *report & recommendation adopted*, 07 Civ. 7381 (RO), 2011 WL 1362120 (S.D.N.Y. Apr. 8, 2011).

However, Plaintiff sufficiently alleges a state-imposed burden on his liberty interest in engaging in his chosen profession. While any alleged damage to his reputation in the legal community, standing alone, likely falls short of the "plus" contemplated by the standard and is more akin to a deleterious effect like damage to professional reputation, Plaintiff asserts the "plus" in other ways. As a result of the allegedly false statements to the press, he alleges the deprivation

19

of some "tangible interest" and impediment through the loss of his OCA Secure Pass, investigation by the Attorney Grievance Committee, and prohibition on his visits to incarcerated clients and court appearances. Compl. ¶ 110. These allegations are more burdensome than the effects resulting from simple defamation because there is an operational impediment to his ability to engage in his profession. *See Sadallah*, 383 F.3d at 38 (providing examples of burdens such as deprivation of a plaintiff's property and the termination of a plaintiff's government employment); *Balentine v. Tremblay*, 554 F. App'x 58, 60 (2d Cir. 2014) (collecting cases).

Nonetheless, as Defendants argue, "even if being investigated by the Attorney Grievance Committee and being stripped [of] his OCA Secure Pass were the result of defamatory statements . . . and did satisfy the 'plus' prong, Plaintiff's 'stigma-plus' claim [fails] because he has not alleged inadequate process" in the loss of his interest in engaging in a chosen profession.[10] Mot. at 12. Plaintiff does not allege that he was denied the right to be heard at a meaningful time or in a meaningful manner when he was prohibited from visiting clients, making court appearances, or when undergoing investigation by the Attorney Grievance Committee, so he fails to allege that he sustained a due process violation. *See Stennett v. N.Y.C. Admin. for Child's Servs.*, 21-CV-1069 (FB) (JRC), 2023 WL 8258800, at *7 (E.D.N.Y. Nov. 29, 2023) (dismissing stigma-plus defamation claim because the plaintiff did not and could not allege that he suffered a loss of due process because he was advised of his right to an administrative hearing when warned that he was the subject of a report of child abuse and/or maltreatment); *cf. Balentine*, 554 F. App'x at 59 (noting that, while it did not rise to the level of a "plus," the plaintiff did allege deprivation of his right under state law to notice and an opportunity to be heard prior to his online registry posting).

---

[10] Plaintiff did not respond to this argument in his Opposition.

Accordingly, Individual Defendants' motion to dismiss Plaintiff's Fourteenth Amendment defamation claim is granted and Plaintiff's Fourteenth Amendment defamation claim is dismissed without prejudice.

### E. Failure-to-Intervene and Conspiracy Claim

Plaintiff alleges a claim for "failure to intervene and conspiracy" against Individual Defendants. Compl. ¶¶ 135-39. Individual Defendants argue that Plaintiff's failure-to-intervene claim fails because (1) it does not sufficiently allege an underlying constitutional violation and (2) they are entitled to qualified immunity and further, they argue that Plaintiff's conspiracy claim fails because (1) there was no underlying constitutional violation, (2) it is barred by the "intra-corporate conspiracy doctrine," and (3) it is insufficiently pled. Mot. at 12-13. Plaintiff responds that he has adequately alleged underlying constitutional violations and that the Second Circuit has never applied the intra-corporate conspiracy doctrine and it is not applicable here. Opp'n at 21-22.

Individual Defendants' Motion seeking dismissal of Plaintiff's failure-to-intervene claim is denied. A failure-to-intervene claim is based on the premise that "all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). It is true that "[t]here can be no failure to intervene without a primary constitutional violation." *Sanabria v. Detective Shawn Tezlof*, 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016). It is also true that the hurdle of qualified immunity applies to a failure-to-intervene claim. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate . . . 'clearly

established statutory or constitutional rights' of which a reasonable person would have known." (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).

As to Individual Defendants' argument that Plaintiff has not plausibly alleged a constitutional violation, the Court has found that Plaintiff has plausibly alleged at least one constitutional violation through his First Amendment retaliation claim, and the Court has not dismissed his Fourth Amendment false arrest or Fourth and Fourteenth Amendment abuse-of-process claims. Because Plaintiff's claims of constitutional violations are not dismissed, this argument is an inadequate basis for dismissal. Similarly, Individual Defendants' argument that they are entitled to qualified immunity is denied because the Court has found that Plaintiff has plausibly alleged the absence of arguable probable cause, and such argument is likewise an inadequate basis for dismissal.

Individual Defendants do not raise an issue with whether Plaintiff asserts facts in support of his failure-to-intervene claim. Nevertheless, the Court notes that it would be premature to dismiss Plaintiff's failure-to-intervene claim at this stage, seeing as certain Individual Defendants "may not be found directly liable, while the other[s] may escape direct liability but nonetheless be found liable for failure to intervene." *Gomez v. City of New York*, 16-CV-1274 (NGG) (LB), 2017 WL 1034690, at \*10 (E.D.N.Y. Mar. 16, 2017) (determining that a motion for judgment on the pleadings was too early a stage to dismiss the plaintiff's failure-to-intervene claim); *see also Seidman v. Colby*, 1:18-CV-202 (TJM/CFH), 2019 WL 1060643, at \*6 (N.D.N.Y. Mar. 6, 2019) (collecting cases and declining to dismiss the plaintiff's failure-to-intervene claim on a motion to dismiss because there was "still a sufficient question of fact" for the claim to survive); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("Whether an officer had sufficient time to intercede or

was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

Turning to Plaintiff's Section 1983 conspiracy claim, Plaintiff does not plausibly allege a Section 1983 conspiracy claim. A Section 1983 conspiracy claim "must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). A plaintiff must sufficiently allege "that a defendant 'acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights.'" *Morpurgo v. Incorporated Village of Sag Harbor*, 697 F. Supp. 2d 309, 331 (E.D.N.Y. 2010) (quoting *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)). Plaintiff has not done so. He does not assert any meeting of the minds among Individual Defendants, Does 1-15, NYPD, or the Queens District Attorney's Office. While he may allege several constitutional violations that the Defendants each may have committed, *see* Compl. ¶¶ 35-37, 39-41, 43-45, Plaintiff does not allege concerted action that rises to the level of a conspiracy claim. Conspiracy is often difficult to prove, *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 706 (S.D.N.Y. 1996), and "need not be shown by proof of an explicit agreement," *Foskey v. Northrup*, 20-CV-0504, 2021 WL 1146217, at *5 (N.D.N.Y. Mar. 25, 2021). It "can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." *Id.* (finding that a meeting of the minds was "plausibly suggested by the coordinated nature of the alleged attack, and the fact that the attack was not a spontaneous reaction to any instant threat"). Here, Plaintiff does not allege facts showing coordination or spontaneity. All Plaintiff alleges is a conclusory, vague allegation that "Individual Defendants also agreed among themselves and with other individuals to act in concert and thus conspired to deprive Plaintiff of

23

his clearly established rights." Compl. ¶ 138.  This is insufficient.  *See Ciambriello*, 292 F.3d at 325.  In light of the foregoing, the Court does not reach Individual Defendants' argument as to the intra-corporate conspiracy doctrine.

Accordingly, Individual Defendants' motion to dismiss Plaintiff's failure-to-intervene-claim is denied and their motion to dismiss Plaintiff's conspiracy claim is granted. Plaintiff's conspiracy claim is therefore dismissed.

### F.  Remaining State-Law Claims

Defendants also move to dismiss Plaintiff's remaining state-law claims against all Defendants.  Mot. at 13-15.  The Court addresses each claim in turn.

#### 1.  False Arrest, Malicious Prosecution, Malicious Abuse-of-Process, N.Y.C. Admin. Code Section 8-802, and Assault-and-Battery Claims

First, Defendants argue that Plaintiff's state-law false arrest, malicious prosecution, malicious abuse-of-process, N.Y.C. Admin. Code Section 8-802, and assault-and-battery claims are barred by probable cause.  Mot. at 13-14.  In response, Plaintiff asserts that these claims should not be dismissed because he has plausibly alleged the absence of probable cause.  Opp'n at 23. Probable cause is a complete defense to state-law claims of false arrest, *Triolo*, 24 F.4th at 106; state-law claims of malicious prosecution, *see Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006); claims under N.Y.C. Admin. Code Section 8-802, *see* N.Y.C. Admin Code § 8-807 ("§ 8-802 shall be construed in the same manner as the right against unreasonable search and seizure . . . created, granted or protected by the fourth amendment of the federal constitution."); and assault-and-battery, *see, e.g.*, *Cunningham v. United States*, 472 F. Supp. 2d 366, 381-82 (E.D.N.Y. 2007).  As discussed above, the Court finds that Plaintiff has plausibly alleged a lack of probable cause such that this is not a basis for dismissal of his claims.

Alternatively, Individual Defendants argue that they are entitled to state-law qualified immunity regarding Plaintiff's state-law claims, except for the N.Y.C. Admin. Code Section 8-802 claim. Mot. at 13. Plaintiff responds that he has plausibly alleged the absence of arguable probable cause. Opp'n at 23. Qualified immunity on state-law claims, including false arrest claims, is granted if the officials' actions "entail 'making decisions of a judicial nature,' unless 'there is bad faith or the action taken is without a reasonable basis.'" *Triolo*, 24 F.4th at 108. This standard differs from federal qualified immunity in that it "requires both objective and subjective reasonableness." *Id.* at 109. Nonetheless, as discussed above, Plaintiff has plausibly alleged the lack of objective reasonableness. Regarding the subjective component, whether the officers acted in bad faith is a question of fact not to be decided on a motion to dismiss. *See Douglas v. City of New York*, 190 N.Y.S.3d 847, 859 (N.Y. Sup. Ct. 2023) ("Whether the officers acted in bad faith or without a reasonable basis during a City-wide social justice protest is a question of fact not to be considered on a motion to dismiss.").

Individual Defendants also argue that Plaintiff's state-law abuse-of-process claim is "insufficiently pled for the same reason as his corresponding federal claim." Mot. at 13. However, having found above that Plaintiff has sufficiently pled an absence of probable cause or arguable probable cause by both federal and state-law standards, the Court finds for the same reasons that his Fourth and Fourteenth Amendment abuse-of-process claim is not dismissed because he has sufficiently pled an absence of probable cause, his state-law malicious abuse-of-process claim is not dismissed.

Thus, Individual Defendants' motion to dismiss Plaintiff's state-law false arrest, malicious prosecution, malicious abuse-of-process, N.Y.C. Admin. Code Section 8-802, and assault-and-battery claims is denied.

25

### 2. IIED and NIED Claims

Defendant argues that Plaintiff's IIED and NIED claims are duplicative of Plaintiff's other claims, including false arrest. Mot. at 14.[11] An IIED claim "may not be used as a substitute for an available traditional tort theory." *Dotson v. Farrugia*, 11 Civ. 1126 (PAE), 2012 WL 996997, at *9 (S.D.N.Y. Mar. 26, 2012); *Sullivan v. City of New York*, 17 Civ. 3779 (KPF), 2018 WL 3368706, at *17 (S.D.N.Y. July 10, 2018). The fact that the alleged conduct comprising a plaintiff's IIED claim is "encompassed entirely within" his claim for false arrest lends itself to a finding that the IIED claim is duplicative. *Id.* at 18. This treatment is further supported by the fact that "in New York, '[IIED] is a theory of recovery that is to be invoked only as a last resort,' when traditional tort remedies are unavailable." *Naccarato v. Scarselli*, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000) (quoting *EEOC v. Die Fliedermaus*, 77 F. Supp. 2d 460, 472 (S.D.N.Y. 1999)). And "[t]he New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." *Moore v. City of New York*, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing *Fischer v. Maloney*, 373 N.E.2d 1215 (N.Y. 1978)). The same reasoning applies to NIED claims. *See Wickland v. City of New York*, 22-CV-1554 (RA), 2024 WL 4355046, at *9-10 (S.D.N.Y. Sep. 30, 2024). The factual basis for Plaintiff's IIED and NIED claims overlaps with his underlying state-law tort claims for false arrest, assault-and-battery, and defamation, none of which have been dismissed.

Accordingly, Defendants' motion to dismiss Plaintiff's IIED and NIED claims is granted, and those claims are dismissed.

---

[11] Plaintiff does not respond to this argument in his Opposition.

26

### 3. Negligent Hiring, Screening, Training, Supervision, and Retention Claim

Defendants assert that "Plaintiff's negligent hiring, screening, training, supervision, and retention claim is conclusory and, in any event, fails because plaintiff alleges that the [I]ndividual [D]efendants were acting within the scope of their employment at all relevant times." Mot. at 14-15. In opposition, Plaintiff argues that the City of New York may be vicariously liable for Individual Defendants' unlawful acts to the extent that they were acting within the scope of their employment, *see* Compl. ¶ 146, but, to the extent that "discovery may reveal" that they were not, Plaintiff's negligent hiring, screening, training, supervision, and retention claim "comes into play," Opp'n at 24.

"'[I]n addition to the standard elements of negligence,' a plaintiff alleging negligent hiring, retention, supervision, and direction must show: '(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 566 (E.D.N.Y. 2021) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). However, "New York law does not permit of a claim for negligent hiring, screening, retention, supervision, and training where defendants act within the scope of their employment." *Edrei v. City of New York*, 254 F. Supp. 3d 565, 583 (S.D.N.Y. 2017) (citing *Schoolcraft v. City of New York*, 103 F. Supp. 3d 465, 51 (S.D.N.Y. 2015)), *aff'd sub nom*, *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018).

First, Plaintiff has not plausibly alleged facts to support this claim. Instead, Plaintiff has alleged facts that oppose a finding of negligent hiring, screening, training, supervision, and retention by asserting that Individual Defendants were "acting in the scope of their employment." *See* Compl. ¶¶ 36, 48. Because Plaintiff alleges, and Individual Defendants do not deny, that

27

Individual Defendants were acting within the scope of their employment, Plaintiff's negligent hiring, screening, retention, supervision, and training claim cannot survive. *See Bleiwas v. City of New York*, 15 Civ. 10046 (ER), 2017 WL 3524679, at \*10 (S.D.N.Y. Aug. 15, 2017) (dismissing negligent hiring, screening, retention, supervision and training claim because the plaintiff alleged, and defendants did not deny, that the police officers were acting within the scope of their employment), *on reconsideration in part*, 15 Civ. 10046 (ER), 2018 WL 401321, (S.D.N.Y. Jan. 11, 2018); *Edrei*, 254 F. Supp. 3d at 583 (same). Second, regarding Plaintiff's dependence on discovery, the mere fact that discovery "may reveal" that Individual Defendants were acting outside the scope of their employment does not meet the Rule 12(b)(6) pleading standard. At the very least, Plaintiff must "call[] for enough fact to raise a reasonable expectation that discovery will reveal evidence" of negligent hiring, screening, training, supervision, and retention. *Twombly*, 550 U.S. at 556. Given the foregoing undisputed assertions that Individual Defendants were acting within the scope of their employment, there is a low likelihood that discovery would reveal such evidence.

Accordingly, Defendants' motion to dismiss Plaintiff's negligent hiring, screening, training, supervision, and retention claim is granted, and this claim is dismissed.

### 4. New York State Constitutional Claims

Defendants argue that Plaintiff's New York State Constitutional claims should be dismissed as duplicative of his federal claims. Mot. at 15. In opposition, Plaintiff asserts that he is permitted under the Federal Rules of Civil Procedure to assert two or more statements of a claim and that his New York Constitutional claim remedies would be available if the Court were to find he had no remedies under Section 1983. Opp'n at 25.

Plaintiff's claims under the New York State Constitution are duplicative of his federal claims. "District courts in this circuit have consistently held that there is no private right of action

28

under the New York State Constitution where, as here, remedies are available under § 1983." *Santander Consumer USA, Inc. v. City of Yonkers*, 20-CV-4553 (KMK), 2022 WL 4134718, at *9 (S.D.N.Y. Sep. 12, 2022); *see also Moore v. City of New York*, 22 Civ. 10957 (LGS), 2024 WL 3361193, at *9 (S.D.N.Y. July 10, 2024).

Accordingly, Defendants' motion to dismiss Plaintiff's New York State Constitution claims is granted, and those claims are dismissed.

### 5. Defamation Claim

Defendants move to dismiss Plaintiff's defamation claim by urging the Court to decline to exercise supplemental jurisdiction over it, presuming all federal claims have been dismissed. Mot. at 15. Further, Defendants proffer that Plaintiff's state-law defamation claim is "the only claim that [P]laintiff should have brought in the first place." *Id.* at 1; *see also* Reply at 9 ("All of [P]laintiff's state law claims—except his defamation claim—are insufficiently pled."). Defendants do not dispute that Plaintiff has plausibly alleged defamation under state law. *See* Mot. at 15; Reply at 9.

Accordingly, Defendants' motion to dismiss Plaintiff's state-law defamation claim is denied.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.

Defendants' motion to dismiss is denied as to Plaintiff's claims for First Amendment retaliation, Fourth Amendment and state-law false arrest, Fourth and Fourteenth Amendment and state-law abuse-of-process, state-law malicious prosecution, violation of N.Y.C. Admin. Code Section 8-802, state-law assault-and-battery, failure-to-intervene, and state-law defamation.

Defendants' motion to dismiss is granted as to Plaintiff's Fourteenth Amendment defamation claim, and this claim is dismissed without prejudice. Further, Defendants' Motion to dismiss Plaintiff's claims for Section 1983 conspiracy, state-law IIED, state-law NIED, state-law negligent hiring, screening, training, supervision, and retention, and New York State Constitutional violations is granted, and these claims are dismissed.

SO ORDERED.

_/s/_____
ORELIA E. MERCHANT
United States District Judge

March 16, 2026
Brooklyn, New York